UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIONNE HILL, on behalf of V.T.H.,

    Plaintiff,

v.                                       Case No. 1:13-cv-709
                                       Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

                                    /

**OPINION**

        Plaintiff[1] brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for social security income (SSI).

        Plaintiff was born on June 21, 1998 (AR 17).[2] By way of background, plaintiff "was previously found disabled as a child under age 18 with a disability commencing October 1, 2001, based on a favorable determination by the Disability Determination Services (DDS) and based on the application filed on October 31, 2001, due to speech and language delays" (AR 14). On November 1, 2005, it was determined that plaintiff, who was seven years old at the time, was no longer disabled (AR 14). This determination was upheld by a hearing decision issued by Administrative Law Judge (ALJ) William J. King, Jr., and not pursued further (AR 14). The ALJ

---

[1] Although Dionne Hill is the nominal plaintiff, the term "plaintiff" herein shall refer to the minor child, V.T.H., the real party in interest. The court notes that the Administrative Law Judge's decision refers to the minor, V.T.H., as "the claimant."

[2] Citations to the administrative record will be referenced as (AR "page #").

in the present case, ALJ James F. Prothro, declined to re-open ALJ King's decision, stating that "[t]he issue of reopening is moot as the appellant in the current application has alleged a later onset date" (AR 14).

This appeal involves an application for SSI filed on behalf of plaintiff on May 26, 2009, with an alleged disability onset date of May 22, 2009 (AR 14). After administrative denial of plaintiff's claim, ALJ Prothro held an administrative hearing on October 25, 2011 (AR 14). Plaintiff and her mother testified at the hearing, along with Robert W. Lamson, Ph. D., a board-certified clinical psychologist, who testified as an impartial medical expert (AR 14). ALJ Prothro reviewed plaintiff's claim *de novo*, and entered a decision denying the claim on November 22, 2011 (AR 14-28). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence.

*Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). An individual under the age of 18 shall be considered disabled if the child

> has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

> There is a three step process in determining whether a child is "disabled" under the new definition set forth in the Act. First, the child must not be engaged in substantial gainful activity; second, the child must have a severe impairment; and third, the severe impairment must meet, medically equal or functionally equal one of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924.

*Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). *See also*, *Kelly v. Commissioner of Social Security*, 314 Fed. Appx. 827, 832 (6th Cir. 2009) (listing framework for a three-step inquiry).

Whether a child's impairment functionally equals a listed impairment is determined by a review of six "domains" which measure the child's ability to function: (i) acquiring and using

3

information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and, (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To establish "functional equivalence" of a listed impairment, the claimant has to show either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). Under the regulations, a "marked limitation" in a domain "interferes seriously with your ability to independently initiate, sustain, or complete activities," while an "extreme limitation" in a domain 'interferes very seriously with your ability to independently initiate, sustain, or complete activities." *See* § 416.926a(e)(2)(i) and (3)(i).

## II. ALJ'S DECISION

Following the three steps, the ALJ first found that plaintiff was born on June 21, 1998, was a school-age child when the application was filed on May 26, 2009, and is currently an adolescent under the regulations (20 C.F.R. § 416.926a(g)(2)) (AR 17). Plaintiff has not engaged in substantial gainful activity since the May 26, 2009 application date (AR 17). The ALJ agreed with the testimony of the medical expert that plaintiff had severe impairments of: attention deficit hyperactivity disorder (ADHD); anxiety disorder NOS; and depression (AR 17).

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets, medically equals or functionally equals on of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 112.04 (mood disorders), 112.06 (anxiety disorders) or 112.11 (ADHD) (AR 19). The ALJ also found that plaintiff did not have an impairment or combination of impairments that functionally equals the severity of the listings. In reaching this determination, the ALJ addressed the six domains as follows.

<u>First Domain</u>. "The medical expert testified and the undersigned agrees" that plaintiff had "no limitation" in acquiring and using information (AR 23).

<u>Second Domain</u>. "The medical expert testified and the undersigned agrees" that plaintiff had "less than marked limitation" in attending and completing tasks (AR 24).

<u>Third Domain</u>. "The medical expert testified and the undersigned agrees" that plaintiff had "less than marked to marked limitation" in interacting and relating with others (AR 25).

<u>Fourth Domain</u>. "The medical expert testified and the undersigned agrees" that plaintiff had "no limitation" in moving about and manipulating objects (AR 26).

<u>Fifth Domain</u>. "The medical expert testified and the undersigned agrees" that plaintiff had "less than marked limitation" in the ability to care for herself (AR 27).

<u>Sixth Domain</u>. "The medical expert testified and the undersigned agrees" that plaintiff had "less than marked limitation" in health and physical well-being (AR 28).

Based on this record, the ALJ concluded that plaintiff was not under a "disability" as defined in the Social Security Act since filing the application for SSI on May 26, 2009 (AR 28).

**III. ANALYSIS**

Plaintiff raised three issues on appeal:

**A.    The ALJ committed reversible error by not properly considering the opinion of the expert witness and by issuing an opinion which was not supported by substantial evidence.**

Plaintiff contends that the ALJ did not accurately represent the testimony given by the medical expert (ME), Robert Lamson, M.D., at the administrative hearing. Specifically, plaintiff contends that the ME testified that plaintiff "was between the less than marked and marked criteria" in the second, third and fifth domains.

5

As an initial matter, when asked to identify "any impairment that in your opinion meets the requirements of a listed impairment," the ME could not provide an immediate response:

> I have been dreading that question and the reason is the exhibits just run a gamut of everything from she's doing much better on medication, no neuropsych concerns, no emotional or psychological concerns, doesn't qualify for emotionally impaired in school, all the way to notes that talk about her having unsuccessful medication trials, and she does better for a couple weeks and then she deteriorates. She's having lots of trouble in school. It seems to run the gamut of she's doing pretty well; friendly, helpful, cooperative, all the way to she needs continued therapy and will have to try another medication and all kinds of other things because things are still bad and don't seem to be working. So it's, it's really quite difficult to kind of wrap an opinion around what's going on here because there's so many divergent things within, actually, and a lot of the exhibits were new. I read them over the noon hour today. I also looked at the various GAF scores. I approached this from several different ways trying to figure out how I could give you a solid opinion that you could have some foundation for, for a decision. And one of the ways was to look and say, okay, out of all the diagnoses that were given, what were the GAF scores attached to them. And I found four different GAF scores and they are all F exhibits, 3, 7 and 8, and all of those had her at a GAF of 58. Exhibit 8F gave her a range as a GAF score of 51 to 60, so they all were in generally the same ballpark. But to the degree that that's accurate, it would put her at a moderately severe level of functioning rather than a serious or a more severe level of functioning. For every, for every exhibit that I have that would indicate that there's a severe problem, I've got another exhibit that says she's doing great. And maybe, and maybe that's my answer. I don't like that as an answer but -- I also approached this from the standpoint of what are the dates of the exhibits. Is there some trend over time that's been shown to say, okay, at this time, yes, it was worse, but at this time it was better or vice versa, but even that seems to be mixed. If I could defer your question and go through the domains and maybe as I'm doing that it will gel a little bit more in my mind.

(AR 65-67).

However, when questioned as to each separate domain, the ME testified: that plaintiff had "no limitation" in acquiring and using information (first domain) (AR 67); that plaintiff had a "less than marked limitation" in attention in attending and completing a task (second domain) (AR 67); that plaintiff had somewhere between a "marked" and "less than marked limitation" in interacting and relating with others (third domain) (AR 69-70); that plaintiff had "no limitation" in

6

moving about, moving and manipulating objects (fourth domain) (AR 70); that plaintiff had a "less than marked limitation" in caring for herself (fifth domain) (AR 70-71); and that plaintiff had a "less than marked limitation" in health and physical well-being (sixth domain) (AR 71).

Plaintiff's counsel attempted to clarify the ME's testimony, asking in pertinent part:

> It sounds like on any particular day she could be marked in domain 2, 3 and 5, and on other days she's fine. Is that a fair assessment?

(AR 72). In response, the ME stated, "I wouldn't have a strong argument against that" (AR 72).

The record reflects that the ALJ properly characterized the ME's opinions regarding the six domains. The ME's additional testimony elicited by plaintiff's counsel did not change the ME's conclusions as stated during his examination by the ALJ (AR 65-71). Accordingly, plaintiff's claim of error will be denied.

### B. The ALJ committed reversible error by using improper boilerplate language in rejecting plaintiff's claim.

Plaintiff contends that ALJ Prothro used meaningless "boilerplate language" to evaluate plaintiff's credibility, when he stated that:

> After considering the evidence of record, the undersigned finds that the child's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the finding that the child does not have an impairment or accommodation of impairments that functionally equals the Listings for reasons explained below.

(AR 21).

Plaintiff relies on the Seventh Circuit decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), which criticized the Agency's use of this type of language in ALJ decisions:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above" — above is just the foreshadowed conclusion of that later assessment. A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be. In this regard we note the tension between the "template" and SSR 96–7p(4), www. ssa. gov/ OP_ Home/ rulings/ di/ 01/ SSR 96– 07– di– 01. html (visited Jan. 4, 2012), which states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." The applicant's credibility thus cannot be ignored in determining her ability to work (her residual functional capacity, in SSA-speak).

*Bjornson*, 671 F.3d at 645-46. The court also opined that "[t]he Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" *Id.* at 646.

Notwithstanding the Seventh Circuit's criticism of this "opaque boilerplate," *id.* at 644, that Court did not summarily reverse the ALJ's decision for using the boilerplate, *see id.* at 644-49. Rather, the Court considered the ALJ's specific reasons for rejecting the ALJ's credibility determination. *See id.* at 646 ("[t]he administrative law judge based his doubts about Bjornson's credibility on his assessment of the medical reports or testimony of the three doctors whom we've mentioned"). Thus, the ALJ's use of the language is not, in and of itself, grounds for reversal if the ALJ also gave specific reasons for rejecting plaintiff's credibility.

Here, however, the ALJ's credibility determination is both unclear and unsupported by specific reasons. An ALJ may discount a claimant's credibility where the ALJ "finds

contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001), *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

In this case, it is unclear whether the ALJ's credibility determination regarding "the statements concerning the intensity, persistence and limiting effects of these symptoms" (AR 21) refers to statements made by plaintiff or plaintiff's mother, both of whom testified at the administrative hearing (AR 33, 37-61, 73-74). The ALJ discussed plaintiff's testimony, but did not make an explicit credibility determination as to her (AR 20-21). The ALJ also discussed the testimony of plaintiff's mother and then stated that "[t]he mother's allegations of severely limited impairments are not found to be supported by the evidence of record" (AR 21).

9

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Boseley v. Commissioner of Social Security Administration*, 397 Fed. Appx. 195, 199 (6th Cir. 2010), an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984). Here, the Court cannot follow the ALJ's reasoning with respect to the credibility determination. Accordingly, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the credibility of both plaintiff and her mother.

### C. The ALJ committed reversible error by failing to find that plaintiff's obesity was not a severe impairment.

Plaintiff contends that ALJ Prothro erred by failing to recognize her obesity as a severe impairment. Plaintiff's contention is without merit. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Servivces*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*,

837 F.2d at 244.  An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity.  *Id.*  "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant."  *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).  The ALJ found that plaintiff had a severe impairment of ADHD, anxiety disorder NOS, and depression (AR 17).  The ALJ's failure to include obesity as another severe impairment at step two is legally irrelevant, and this claim of error will be denied.

### IV.     Conclusion

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate the credibility of both plaintiff and her mother.  A judgment consistent with this opinion will be issued forthwith.


Dated:  September 29, 2014                    /s/ Hugh W. Brenneman, Jr.
                                              HUGH W. BRENNEMAN, JR.
                                              United States Magistrate Judge